**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal No. 18- |
| | : | |
| v. | : | Violation: |
| | : | |
| WAVENEY BLACKMAN, | : | 18 U.S.C. § 1347 (Health Care Fraud); |
| | : | 18 U.S.C. § 2 (Aiding and Abetting and |
| Defendant. | : | Causing an Act to Be Done); and |
| | : | 18 U.S.C. § 982(a)(7) and |
| | : | 21 U.S.C. § 853(p) (Criminal Forfeiture). |

**INFORMATION**

The United States of America charges that:

**GENERAL ALLEGATIONS**

At all times relevant to this Information:

**The Medicaid Program**

1.      Medicaid was a medical assistance program established by Congress under Title XIX of the Social Security Act of 1965 (the "Medicaid Act").  Medicaid was overseen and administered by the Centers for Medicare and Medicaid Services, an agency within the United States Department of Health and Human Services, and provided medical insurance coverage primarily to individuals (hereinafter referred to as "Medicaid beneficiaries") whose incomes fell below a certain financial threshold as measured against the poverty line.  Under the Medicaid Act, each state, and the District of Columbia, was required to promulgate and administer its own plan for medical assistance in accordance with federally established minimum requirements.  The Medicaid program in the District of Columbia ("Medicaid") was administered by the District of Columbia Department of Health Care Finance, located at 441 4th Street, N.W., Washington, D.C.

Medicaid was jointly funded by the federal government and the District of Columbia, with the federal government paying approximately 70% of the costs of the Medicaid program.

2. Medicaid was a "health care benefit program" as defined in 18 U.S.C. § 24(b).

3. Companies that were enrolled in Medicaid and purported to provide covered medical supplies and equipment to Medicaid beneficiaries were known as "providers." In order to become a provider, a company first had to submit an enrollment application to obtain a Medicaid provider number. Providers accepted into the Medicaid program were given a unique provider identification number. Only providers who have been assigned a provider number could submit claims for payment to Medicaid. In most instances, payments were made directly to the providers.

4. To receive payments from Medicaid, providers operating in the District of Columbia were required to submit a claim, either electronically or in paper form. Medicaid contracted with Conduent (and previously contracted with Xerox, formerly Affiliated Computer Services) ("Conduent/Xerox"), to serve as its fiscal agent and to receive and process Medicaid claims submitted by Medicaid providers. Claims for payment could be submitted to Conduent/Xerox either electronically or on paper, either by the Medicaid provider or by a third-party billing company hired by the Medicaid provider to submit the claims.

5. Medicaid used the Healthcare Common Procedure Coding System ("HCPCS") level II standardized coding system, also known as procedure codes, for describing and identifying health care equipment and supplies in health care transactions. On each claim form the Medicaid provider submitted or caused to be submitted to Medicaid, the provider had to identify certain information. For providers of durable medical equipment and surgical supplies such as wound care and incontinence supplies (hereinafter, "DME"), that information included the name of the Medicaid beneficiary, the date that the supplies and equipment were provided, the type of supply

and equipment, the corresponding HCPCS code, and the amount of money being claimed by the provider as payment from Medicaid. Medicaid only pays for equipment and supplies that were medically reasonable and necessary, and that were actually provided as claimed. Medicaid paid for each item of DME in accordance with a pre-determined fee schedule based on HCPCS codes.

## The Defendant and Relevant Individuals and Companies

6. Defendant WAVENEY BLACKMAN was the 100% owner, registered agent, and Chief Executive Officer of WaveCare Health Services LLC aka WaveCare Healthcare Services LLC ("WaveCare"). WAVENEY BLACKMAN controlled all of WaveCare's bank accounts and either supervised or was responsible for supervising all of WaveCare's Medicaid billing.

7. WaveCare was a provider of DME including wound care and incontinence supplies to Medicaid beneficiaries and others. WaveCare was organized in the District of Columbia in 2008. WaveCare's offices were primarily located at 1405 H Street Northeast, Suite #2, Washington, D.C.

8. Biller-1 was engaged by WAVENEY BLACKMAN to submit claims to Medicaid. Biller-1 is located in Texas.

9. Employee-1, the Patient Care Coordinator, began working at WaveCare in 2013. WAVENEY BLACKMAN instructed and authorized Employee-1 to submit billing intake sheets to Biller-1 on behalf of WaveCare, which were used to bill Medicaid.

10. Employee-2, the Business Development Representative, began working at WaveCare in 2012. WAVENEY BLACKMAN instructed and authorized Employee-2 to submit billing intake sheets to Biller-1 on behalf of WaveCare, which were used to bill Medicaid.

## COUNT ONE
### Health Care Fraud
### (18 U.S.C. § 1347)

11.     Paragraphs 1 through 10 of the General Allegations section of the Information are re-alleged and incorporated by reference as though fully set forth herein.

12.     From in or around January 2010, and continuing through in or around June 2016, in the District of Columbia and elsewhere, WAVENEY BLACKMAN, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a federal health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of Medicaid, in connection with the delivery of and payment for health care benefits, items and services.

### Purpose of the Scheme and Artifice

13.     It was a purpose of the scheme and artifice for WAVENEY BLACKMAN to unlawfully enrich herself by, among other things, (a) submitting and causing to be submitted false and fraudulent Medicaid claims for DME, including incontinence and wound care supplies, that WAVENEY BLACKMAN knew were not purchased and not provided to Medicaid beneficiaries; (b) concealing the submission of false and fraudulent claims to Medicaid; (c) concealing the receipt of fraudulent proceeds through the transfer of such proceeds; and (d) diverting the fraud proceeds for her personal use and benefit.

### The Scheme and Artifice

14.     The manner and means by which WAVENEY BLACKMAN sought to accomplish the purpose of the scheme and artifice included, among other things, the following:

15. In or about February 2008, WAVENEY BLACKMAN, on behalf of WaveCare, submitted a Pilot Durable Medical Equipment/Prosthetics and Orthotics Supplies (DME/POS) application to the D.C. Department of Health, Medical Assistance Administration. In or about March 2008, that application was approved, and WaveCare became a Medicaid provider. In or about July 2008, WAVENEY BLACKMAN, on behalf of WaveCare, entered into a Medicaid Durable Medical Equipment/Prosthetics and Orthotics Provider Agreement, with the District of Columbia Department of Health Medical Assistance Administration. By enrolling as a Medicaid provider and entering into the July 2008 agreement, WAVENEY BLACKMAN agreed that WaveCare would abide by all Medicaid laws, regulations and program instructions that applied to WaveCare.

16. WAVENEY BLACKMAN, devised and executed a scheme to submit false and fraudulent claims to Medicaid for DME, including for incontinence and wound care supplies, that WAVENEY BLACKMAN knew were not purchased and were not provided to Medicaid beneficiaries.

17. WAVENEY BLACKMAN sent and caused Employee-1, Employee-2 and others to send to Biller-1 false and fraudulent invoices for DME, including for incontinence and wound care supplies, that WAVENEY BLACKMAN knew were not purchased and were not provided to Medicaid beneficiaries. WAVENEY BLACKMAN caused Biller-1 to submit claims to Medicaid based on these false and fraudulent WaveCare invoices. Medicaid then issued payments to WaveCare for these false and fraudulent claims.

18. WAVENEY BLACKMAN submitted and caused the submission of at least $9.8 million in false and fraudulent claims to Medicaid for DME that WAVENEY BLACKMAN knew was not purchased and not provided to Medicaid beneficiaries. By falsely and fraudulently billing

Medicaid for DME that WAVENEY BLACKMAN knew was not purchased and not provided to Medicaid beneficiaries, WAVENEY BLACKMAN, through WaveCare, fraudulently obtained $9,431,979.56 she was not entitled to receive from Medicaid.

**(Health Care Fraud, Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 1347 and 2)**

**FORFEITURE ALLEGATION**

    1.    Upon conviction of the offense alleged in Count One of this Information, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of this offense, pursuant to Title 18, United States Code, Section 982(a)(7). The United States will also seek the forfeiture of the following specific property:

    (a)    $676,247.36 in U.S. Currency seized by the government on or about June 4, 2018, from Citibank account number XXX1614, held in the name of Waveney A. Blackman;

    (b)    $127,939.69 in U.S. Currency seized by the government on or about June 4, 2018, from Citibank account number XXX8152, held in the name of Waveney A. Blackman and Charlene Inverary-Wills;

    (c)    2016 Mercedes Benz GLE VIN4JGDA5HB2GA718280 Registered in the name of Waveney Albertha Blackman;

    (d)    The real property and premises commonly known as 11921 Harpswell Dr., Riverview, FL 33634, including all appurtenances, improvements, and attachments thereon, and any property traceable thereto;

(e) The real property and premises commonly known as 5822 Peach Heather Trail, Valrico, FL 33596, including all appurtenances, improvements, and attachments thereon, and any property traceable thereto;

(f) The real property and premises commonly known as 4413 Huntchase Dr., Bowie, MD 20720, including all appurtenances, improvements, and attachments thereon, and any property traceable thereto;

(g) The real property and premises commonly known as 316 Pauls Dr., Brandon, FL 33511, including all appurtenances, improvements, and attachments thereon, and any property traceable thereto;

(h) The real property and premises commonly known as 143 Waterfront St., Unit 404, National Harbor, MD 20745, including all appurtenances, improvements, and attachments thereon, and any property traceable thereto;

(i) The real property and premises commonly known as 12501 Pleasant Prospect Rd., Bowie, MD 20721, including all appurtenances, improvements, and attachments thereon, and any property traceable thereto; and

(j) The real property and premises commonly known as 8725 Greenbelt Rd., Unit F3, Greenbelt, MD 20770, including all appurtenances, improvements and attachments thereon, and any property traceable thereto.

The United States will also seek a forfeiture money judgment against the defendant in the amount of $9,431,979.56.

2. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the Court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property that cannot be subdivided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value

of the property described above, pursuant to Title 21, United States Code, Section 853(p).

(Criminal Forfeiture, in violation of Title 18, United States Code, Section 982(a)(7), and Title 21, United States Code, Section 853(p))

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar No. 415793

By: *[signature]*
EMILY A. MILLER
D.C. Bar No. 462077
Assistant United States Attorney
Fraud & Public Corruption Section
555 4th Street, N.W., 5th Floor
Washington, D.C. 20530
(202) 252-6988
Emily.Miller2@usdoj.gov

AMY MARKOPOULOS
D.C. Bar No. 996124
Trial Attorney
Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
(202) 230-0595
Amy.Markopoulos@usdoj.gov

PARKER TOBIN
VA Bar No. 91126
Trial Attorney
Department of Justice
Criminal Division
Money Laundering and Asset Recovery Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
(202) 305-3903
Parker.Tobin@usdoj.gov